UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jomo Hill,

        Petitioner,                  Court File No. 20-cv-1365 (SRN/LIB)

v.

                                     **REPORT AND RECOMMENDATION**

Warden J. Fikes,

        Respondent.

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Jomo Hill's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Docket No. 1].

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED with prejudice**.

**I.     BACKGROUND AND STATEMENT OF FACTS**

After Petitioner pled guilty to Hobbs Act Robbery and Brandishing a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 1951(a) and § 1924(c)(1)(A)(ii) respectively, the United States District Court for the Eastern District of Wisconsin sentenced Petitioner on October 4, 2018, to an aggregated 106-month term of imprisonment and a subsequent 3-year term of supervised release. (Ex. B [Docket No. 7-2], at 1–3). Petitioner was further sentenced to pay a $200 special assessment, as well as, $16,548.13 in restitution. (Id. at 5). The schedule of payments indicated that the special assessment was to be paid first, followed

by the restitution, and "[u]nless the Court has expressly ordered otherwise . . . , payment of the criminal monetary penalties shall be due during the period of imprisonment." (Id. at 5).

Petitioner is currently incarcerated at FCI Sandstone. (Kensy Decl. [Docket No. 10] ¶ 4). His projected release date is September 6, 2025. (Ex. A [Docket No. 10-1], at 1). While incarcerated, Petitioner has participated in the Bureau of Prisons ("BOP") Inmate Financial Responsibility Program ("IFRP"). (See, Pet. [Docket No. 1]).

Through the IFRP, "[t]he Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. To that end, "[w]hen an inmate has a financial obligation, BOP staff is required to help that inmate develop a financial plan and monitor the inmate's progress in meeting that obligation." Cervantes v. Cruz, No. 07-4738 (DWF/JJK), 2009 WL 76685, at *3 (D. Minn. Jan. 8, 2009) (citing 28 C.F.R. § 545.11). "Participation in the IFRP is not mandatory." Id. However, "[i]f an inmate refuses to participate in the IFRP, or to comply with the provisions of his financial plan, he will not be considered for various program privileges, such as furloughs, outside work details, and community-based programs." Id.; see also, 28 C.F.R. § 545.11(d)(1)–(5), (8)–(11). "In addition, failure to participate in the IFRP may subject an inmate to a lower housing status (dormitory, double bunking, etc.) and a spending limit in the commissary." Id.; see also, 28 C.F.R. § 545.11(d)(6)–(7).

Pursuant to the IFRP, Petitioner agreed to make payments of $60 monthly starting in October 2019. (Ex. D [Docket No. 7-4], at 1). Subsequently, Petitioner's payments were increased to $95 per month due to an increase in his 6-month deposits. (Id.). Petitioner refused to sign the new contract, however, and he was placed in IFRP refuse status. (Id.). On June 25, 2020,

2

Petitioner signed a new IFRP contract agreeing to pay $50 per quarter beginning in September 2020. (Id. at 1–2).

## II.  PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

On May 28, 2020, Petitioner initiated the case presently before the Court by filing his Petition for Writ of Habeas Corpus. [Docket No. 1]. Petitioner asserts that "[u]nder [Program Statement] 5380.08, a non-UNICOR inmate payment is to be set at 25.00 dollars per quarter and may only exceed this minimum payment based on the inmate's specific obligations institution resources and community resources." (Id.). Petitioner further asserts that he earns $12–$14 per month, and he has no community resources as demonstrated by the fact that he is not employed outside FCI Sandstone. (Id.). Thus, Petitioner contends that his IFRP payments should be reduced from $50 quarterly to $25 quarterly. (Id.).

### A.  Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10–cv–4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011), report and recommendation adopted by 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002). "A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court." Matheny, 307 F.3d at 711. The Eight Circuit has held that claims challenging an IFRP payment schedule "concern the execution of sentence, and are therefore correctly framed as § 2241 claims brought in the district where the sentence is being carried out." Id. at 711–12.

B. Analysis

Petitioner contends that his IFRP payments should be reduced from $50 quarterly to $25 quarterly. (Pet. [Docket No. 1]). Petitioner's argument is not well articulated.[1] However, it is clear that Petitioner is challenging his IFRP payment schedule, and thus, he is challenging the execution of his sentence. Matheny v. Morrison, 307 F.3d at 711–12. Therefore, the present § 2241 Petition is properly before this Court. See, Id.; see also, Frauendorfer v. Fondren, No. 08-709ADM/AJB, 2009 WL 924528, at *3 (D. Minn. Apr. 2, 2009).

The Eighth Circuit has held that the BOP has discretion to place an inmate in an IFRP payment plan where a court-imposed fine, such as restitution, has been ordered due immediately. Matheny, 307 F.3d at 712. Pursuant to 18 U.S.C. § 3572(d), "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."

Here, the United States District Court for the Eastern District of Wisconsin ordered petitioner as part of his sentence to pay a $200 special assessment, as well as, $16,548.13 in restitution. (Ex. B [Docket No. 7-2], at 5). The sentencing court did not provide for payment on a certain date, nor did it specify an installment plan.[2] (Id. at 5–6). Therefore, Petitioner's monetary

---

[1] Consequently, it is unclear on the present record whether Petitioner properly exhausted his remedies with the BOP prior to filing the present Petition. (See, Pet. [Docket No. 1]). However, "[e]xhaustion of remedies as a prerequisite to filing § 2241 petitions is a judicially-created barrier, not jurisdictional in nature." Berry v. Marques, 18-cv-934 (SRN/TNL), 2018 WL 3750543, at *2 n.3 (D. Minn. July 18, 2019), report and recommendation adopted by 2018 WL 3748179 (D. Minn. Aug. 7, 2018). As Respondent has not raised any exhaustion argument, this Court considers the Petition on its merits.

[2] As a condition of Petitioner's supervised release following his term of imprisonment, he is required "to pay the restitution that the Court has ordered at a rate of not less than $25.00 per month." (Id. at 4). However, the court-ordered schedule of payments clearly indicates that "payment of the criminal monetary penalties shall be due during the period of imprisonment." (Id. at 6). Moreover, the schedule of payments expressly anticipates Petitioner's participation in the IFRP by stating that "[a]ll criminal monetary penalty payments, except those payments made through the Bureau of Prisons Inmate Financial Responsibility Program are to be made as directed by the Court, the defendant's supervising probation officer, or the United States Attorney." (Id.) (emphasis added). Therefore, the inclusion of a minimum payment in the terms of Petitioner's supervised release does not qualify as a specified installment plan for purposes of the present analysis. See, Matheny, 307 F.3d at 712 (finding an inmate's court-

4

penalties are due immediately. See, 18 U.S.C. § 3572(d); Matheny, 307 F.3d at 712; Cervantes, 2009 WL 76685, at *4.

The record presently before the Court indicates that Petitioner has satisfied the special assessment, but most of his court-ordered restitution remains outstanding. (See, Ex. D [Docket No. 7-4], at 3). Because Petitioner currently owes restitution that is due immediately, the BOP has the authority to place Petitioner in the IFRP. See, Matheny, 307 F.3d at 712; Cervantes, 2009 WL 76685, at *4. Therefore, to the extent that Petitioner's argument can be construed as challenging the BOP's authority to place him in the IFRP, his argument fails.

Similarly, to the extent that Petitioner's argument can be construed as challenging the BOP's application of the IFRP, it too fails. Program Statement 5380.08 relates to the IFRP and provides that "[o]rdinarily, the minimum payment for non-UNICOR and UNICOR grade 5 inmates will be $25.00 per quarter. This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institutional resources, and community resources." (Ex. C [Docket No. 7-3], at 6); see also, 28 C.F.R. § 545.11. Program Statement 5380.08 also provides that an inmate's IFRP will be periodically reviewed, and the inmate's financial plan may be increased or decreased. (Id. at 7, 9–10).

Moreover, Program Statement 5380.08 specifies that at each program review, the BOP must "determine the total funds deposited into the inmate's trust fund account for the previous 6 months" and subtract from that total any IFRP payments made by the inmate during those 6 months, as well as, $450 which is excluded to allow the inmate to better maintain telephone communication. (Id. at 7). The remaining amount "may be considered for IFRP payments regardless of whether the money is in the inmate's trust fund or phone credit account." (Id.).

---

ordered restitution was due immediately despite the inmate being required to make restitution payments of at least $260 per month as a condition of supervised release following his term of imprisonment).

5

However, an inmate's financial plan is ultimately at the sole discretion of the Unit Manager. (Id.). Payment amounts are determined on a case-by-case basis and may vary based on individual circumstances. (Id. at 7–8).

Here, Petitioner's current IFRP financial plan calls for him to make quarterly payments of $50. (Ex. D [Docket No. 7-4], at 1–2). Respondent asserts that Petitioner's payment plan was calculated in accordance with the method set forth in Program Statement 5380.08. (See, Mem. in Opp'n [Docket No 6], at 10–11; Kensy Decl. [Docket No. 7] ¶ 17). In addition, Respondent contends that because Petitioner "has received numerous deposits from the community in the past six months," he "will be able to make his agreed-upon payment of $50 per quarter." (Kensy Decl. [Docket No. 7] ¶ 17; see also, Mem. in Opp'n [Docket No 6], at 10–11).

The record presently before the Court indicates that Petitioner did indeed receive several deposits into his trust fund account in the 6 months prior to his June 25, 2020, IFRP contract in which he agreed to make $50 quarterly payments. (See, Ex. E [Docket No. 7-5], at 2). Although Petitioner only earns $12–$14 per month at FCI Sandstone and is not employed outside that facility, Program Statement 5380.08 expressly requires the BOP to consider the total funds deposited into his trust fund account when developing his IFRP financial plan. (Ex. C [Docket No. 7-3], at 7). When Petitioner's institutional and community resources, including his total deposits, are considered and the proper deductions made, Petitioner's agreed-upon $50 quarterly payment is permissible pursuant to Program Statement 5380.08. (See, Id. at 7–8).

Thus, on the present record, this Court concludes that the BOP properly applied the IFRP in determining Petitioner's financial plan. See, Gaines v. Castillo, No. 11-3113-CV-S-RED-H, 2011 WL 5546865, at *2 (W.D. Mo. Oct. 17, 2011), report and recommendation adopted by 2011 WL 5546546 (W.D. Mo. Nov. 14, 2011) ("[B]ecause the BOP has the discretion to require

petitioner to pay on an installment basis, to the extent that he can make the payments, and because the record indicates petitioner can reasonably make the $40.00 monthly payment, based on his community resources and deposits in his inmate account, petitioner's claim is without merit.").

Lastly, the Court notes that "[p]articipation in the IFRP is not mandatory." Cervantes, 2009 WL 76685, at *3. In addition, prison inmates have no constitutional right to receive the benefits or privileges at issue when an inmate refuses to participate in the IFRP. "Therefore, any adverse consequences that may occur to Petitioner as a result of his withdrawal from the IFRP program do not trigger a constitutional claim." Id. at *5; see also, Gaines, 2011 WL 5546865, at *2 ("[F]urther, because participation in the program is voluntary . . . [and] penalties incurred for not participating do not rise to constitutional proportions, it cannot be said that petitioner has stated a constitutional violation on this issue.").

Accordingly, this Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **denied**, and that this action be **dismissed with prejudice**.

### III. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED with prejudice.**

Dated: January 29, 2021                                         s/Leo I. Brisbois
                                                                The Honorable Leo I. Brisbois
                                                                United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).